**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | |
|---|---|
| MARTIN H. KING, JR., and FREEDA POSEY KING, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:06-CV-203 JVB ) ) |
| FIERRO TRUCKING, INC., and TOBIAS LEDEZMA | ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Motion of Defendant Fierro Trucking, Inc, for summary judgment on Counts II and III of Plaintiffs' First Amended Complaint (DE 38) and its motion for oral argument on the summary judgment motion (DE 40). The motion for oral argument is **DENIED.** For the reasons set forth below, the motion for partial summary judgment is **GRANTED.**

**A. Background**

On September 20, 2004, Plaintiff Martin King and Defendant Tobias Ledezma were both driving tractor trailers in the right hand east bound lane of Interstate 80/94 in a construction zone

near the city of Gary in Lake County, Indiana. Plaintiff Martin King's truck was in front of the truck driven by Defendant Ledezma. Plaintiff Freeda King was a passenger in the truck driven by her husband.  The front end of Defendant Ledezma's truck struck the rear of the Kings' trailer.

On June 5, 2006, Plaintiffs filed this action against Fierro Trucking, Inc., and Ledezma. Plaintiffs' First Amended Complaint, filed on March 6, 2007, is in three counts.  Count I is based on negligence on the part of Defendant Ledezma and the doctrine of respondeat superior against Defendant Fierro Trucking.  Count II alleges negligent entrustment, supervision, and hiring on the part of Fierro Trucking; Count III claims wilful and wanton entrustment, supervision, and hiring.  Federal jurisdiction is based on diversity of citizenship: Plaintiffs are citizens of Tennessee; Defendant Fierro was incorporated and had its principal place of business in Illinois; Defendant Ledezma is a resident of Illinois, but appears to be a citizen of Mexico without permanent resident alien status in the United States.[1]  *See* Ledezma Deposition at 10 and 12. Plaintiffs have alleged that the amount in controversy exceeds $75,000, the jurisdictional minimum amount under 28 U.S.C. § 1332.

**B.  Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment,

---

[1]Title 28 U.S.C. § 1332(a) confers on federal districts courts jurisdiction of civil actions between citizens of a State and citizens of a foreign state as well as actions between citizens of different States.

after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular claim and "only disputes over facts *that might the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether

there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**C.  Facts**

Jose Fierro, as president and owner of Defendant Fierro Trucking, Inc., hired Defendant Ledezma as a truck driver for his company.[2]  Fierro Trucking consisted of Jose Fierro and two drivers. Jose Fierro had five months' truck driving experience at Midwest Fence Company and five months' experience driving a truck for his brother's company when he started Fierro Trucking.

Fierro Trucking did not have written rules and procedures or require a written application from its drivers.  Jose Fierro did not contact references or perform a background check on Defendant Ledezma before he hired Ledezma.  Jose Fierro did not periodically check the status of his drivers' licenses.  The company had no written policy for drug testing of employees generally or following an accident.  Defendant Ledezma took a drug test before beginning work for Fierro Trucking, but does not recall any other drug testing during his employment there.  The Company did not require him to take a drug test following the accident on September 20, 2004.  No vehicle maintenance records were kept for the truck involved in the accident.  The Company did not give its drivers copies of the Federal Motor Carrier Safety Rules and Regulations, or any other written manuals or directives.

Before Defendant Ledezma started working for Defendant Fierro Trucking, Ledezma gave

---

[2]In its Statement of Material Facts, Defendant Fierro Trucking cites to the depositions of Jose Fierro and Defendant Ledezma.  However, the Court is unable to locate their depositions among the exhibits filed with Fierro Trucking's Motion.  Plaintiffs have filed excerpts from both depositions; however, the pages cited by Defendant Fierro Trucking are not included in many instances, so that the Court is unable to verify Fierro's citations.  Nonetheless, to the extent that Plaintiffs have not designated evidence showing that matters set forth in Fierro Trucking's Statement of Material Facts are disputed, the Court will accept them as true.

4

Jose Fierro written proof of the Illinois Department of Transportation's inspection of his tractor trailer, a copy of his commercial driver's license, and his medical card. Jose Fierro questioned Ledezma about his driving record and his medical status as part of the application process. Defendant Ledezma's on the job training with Fierro Trucking consisted of two weeks of driving with Jose Fierro during which Jose Fierro confirmed that Ledezma was skilled and reliable. Jose Fierro held weekly safety meetings, usually on Fridays, which Defendant Ledezma attended, in which he discussed matters such as vehicle and equipment maintenance and rules of the road.

Before his employment with Defendant Fierro Trucking, Defendant Ledezma drove a truck for Midwest Fence for four to five months. Ledezma had worked for Defendant Fierro Trucking for almost a year when the September 20, 2004, collision occurred. The only known blemishes on Defendant Ledezma's driving record before the collision were two tickets for logbook violations. Ledezma had not consumed any alcoholic beverages, drugs, tranquilizers, sedatives, sleeping pills, medicines, narcotics, or other pills in the 24 hours before the collision. The morning of September 20, he had started work at around 5:00 or 6:00 am after a full night's sleep. Before starting out that day Ledezma performed a pre-trip inspection of his vehicle, consisting of a check of the brakes, lights, tires and mirrors on both the tractor and the trailer, which revealed no problems.

Defendant Ledezma worked for no other employer during the time he worked for Defendant Fierro Trucking. He was paid for a completed load and not by mileage or weight. Defendant Fierro Trucking received a percentage of each load.

It is not clear to the Court who owned the truck Defendant Ledezma drove. As Plaintiffs point out in their Designation of Material Facts, Defendants admitted in both their Answer and

Amended Answer that Defendant Fierro Trucking owned the vehicle. Nonetheless, Defendant Fierro Trucking claims that Defendant Ledezma owned the truck and leased it to Fierro Trucking, but that no written lease exists. Fierro Trucking paid no rent for the vehicle. The ICC number on the tractor trailer and the DOT number were in the name of "Fierro." (Pls.' Statement of Material Facts, ¶ 15.) It is not clear whether "Fierro" refers to the trucking company or the individual.

According to Defendant Ledezma, immediately before the collision he looked over to the right shoulder. As his gaze returned to the traffic ahead, the front end of his tractor trailer struck the rear of Plaintiffs' trailer. According to Plaintiff Martin King, a tractor trailer driver is supposed to maintain a distance of fifty feet from the vehicle in front of him.

**D.  Analysis**

**1.  Summary of Arguments**

Defendant Fierro Trucking argues that the foregoing facts are insufficient to state claims of negligent or wilful and wanton entrustment, supervision, and hiring under Indiana law. Fierro Trucking maintains that Plaintiffs do not make out a case for negligent entrustment in light of the fact that Fierro Trucking had no right to control the vehicle because the Defendant Ledezma owned the truck involved in the accident and Ledezma was an independent contractor. Defendant Fierro Trucking argues further that Plaintiffs have not shown that Fierro Trucking entrusted the vehicle to Ledezma with knowledge that he was incompetent to drive. Regarding Plaintiffs' allegations of negligent hiring and supervision, Defendant Fierro Trucking asserts that Indiana law assigns liability for the negligent hiring of an independent contractor only in specific circumstances not present in this case.

Plaintiffs maintain that Fierro Trucking's failure to comply with a number of statutory and regulatory provisions constitutes negligent entrustment, hiring, and supervision per se, and that jury questions are presented as to whether the violations were a proximate cause of the collision and whether Defendant Ledezma was a Fierro Trucking employee rather than an independent contractor.[3] Fierro Trucking counters that summary judgment is appropriate because Plaintiffs have failed to raise a genuine issue of material fact as to whether the claimed statutory and regulatory violations were the proximate cause of the Plaintiffs' injuries.

**2. Violation of Statutory or Regulatory Duty to Establish Fierro's Independent Liability**[4]

Under Indiana law, an unexcused violation of a statutory duty is negligence per se. *Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1383 (Ind. App., 1993).[5] However, negligence per se does not mean that there is liability per se. The violation of a statutory duty is not actionable negligence unless it is also a proximate cause of the plaintiff's injury such that the injury "would not have occurred if the requirements of the statute had been observed." *Ray v. Goldsmith*, 400 N.E.2d 176, 179 (Ind. App. 1980). Thus, assuming that Defendant Fierro Trucking violated statutory and regulatory duties without excuse, the trucking company is still entitled to summary judgement if there is no genuine issue of material fact that the violations were a proximate cause of Plaintiffs' damages. *See Munsell v. Hambright*, 776 N.E.2d 1272, 1279 (Ind. App. 2002). A

---

[3]The Court's resolution of other issues makes determination of Ledezma's status as a common law employee or and independent contractor vis-a-vis Fierro Trucking unnecessary.

[4]Defendant Fierro Trucking concedes that it is vicariously liable without fault under Count I of the Complaint if Defendant Ledezma is determined to be liable, on the basis of its oral lease of Ledezma's truck from him, FMCS regulations, and the fact that its placards were on the vehicle.

[5]The Federal Motor Carrier Safety Regulations ("FMCSR") have been incorporated by reference into the Indiana Code at I.C. 8-2.1-24-18(a).

party's act or omission is the proximate cause of an injury if the injury is the natural and probable consequence of the act or omission and should have been reasonably foreseen and anticipated in light of the circumstances. *Id.* at 1280.

Plaintiffs' brief is by no means clear as to the identity of the specific statutory and regulatory violations they maintain proximately caused the September 20 collision. In their brief, at page 7, Plaintiffs state: "Fierro Trucking, Inc., failed to comply with even the most basic fundamental statutory requirements of the FMCSR when it hired driver Ledezma. (Plaintiffs' Statement of Material Facts # 7 [no written rules and procedures, no written application], 8 [failed to contact references or perform a background check, or ask previous employers about Ledezma's job performance, or make periodic checks into the status of employees' CDL licenses], 9 [no written policy for drug testing; Ledezma took a drug test before beginning work for Fierro Trucking, but does not recall other tests], 10 [no written policy for employees involved in a crash], 14 [no written lease of the truck owned by Ledezma; no rent paid for the vehicle], 17 [no drug test required of Ledezma after the September 20, 2004 collision], 18 [Ledezma was a resident alien with an expired work permit who speaks and writes very little English], 19 [Ledezma received his CDL license in Chicago in May, 2003. He was not asked to show proof of a valid work visa when he obtained his CDL], 20 [before driving for Fierro, Ledezma had driven a truck for Midwest Fence for four to five months. Ledezma worked at Fierro Trucking for almost a year before the September 20, 2004 collision] )." Plaintiffs for the most part have not identified which, if any, regulations Defendant Fierro Trucking violated by each of the specified acts and omissions they complain of.

It is clear that Plaintiffs charge Defendant Fierrro Trucking with failing to require

Defendant Ledezma to complete a written application form containing the information required by 49 C.F.R. § 391.21: the company's name and address; the applicant's name, address, date of birth, and social security number; his residence during the three years preceding the application; the issuing State, number, and expiration date of the applicant's commercial motor vehicle drivers license; the nature and extent of the applicant's experience in the operation of motor vehicles, including the types of equipment the applicant has operated; a list of all motor vehicle accidents in which the applicant was involved during the preceding three years; a list of all the applicant's convictions for violations of motor vehicle laws during the previous three years; information on any license or permit denial, revocation, or suspension; a list of the applicant's employers during the preceding three years, including employment dates and the reason for leaving that employer. Significantly, however, Plaintiffs do not draw the Court's attention to any evidence in the record that a written application would have afforded evidence of Ledezma's inability to safely operate his truck.

The Plaintiffs also claim, though not so clearly, that Defendant Fierro Trucking did not conduct all the investigations and inquiries required by 49 C.F.R. § 391.23 before hiring Defendant Ledezma.[6]   Plaintiffs also refer to the fact that 49 C.F.R. § 391.11(a) prohibits a motor carrier from permitting a person to drive a commercial motor vehicle unless that person is qualified to drive the vehicle under the standards of § 391.11(b) but Plaintiffs do not show that Ledezma failed to meet any of the requirements of that section, with the exception of mentioning

---

[6]Title 49 C.F.R. § 391.23 requires motor carriers to review their drivers' driving record and safety performance history and to make inquiries to previous employers concerning previous accidents as well as alcohol and substance testing violations and to verify employment.

Ledezma's limited ability to speak and write English.[7]

Defendant Fierro Trucking concedes that no written application form was furnished to or completed by Defendant Ledezma and that its pre-employment investigation did not include contacting previous employers. However, Plaintiffs fail to point to any evidence in the record which would suggest that a written application from Defendant Ledezma or a more thorough pre-employment investigation would have disclosed information calling into question Defendant Ledezma's ability to safely operate a tractor trailer or contributed to the collision in any other way.

Assuming that Defendant Ledezma's English is deficient by the standards of 49 C.F.R. § 391.11, once again, the Court has not been made aware of any evidence or reasonable inferences which would suggest his lack of proficiency in English in any way caused or contributed to the collision. If the Plaintiffs could demonstrate the existence of some evidence from which to infer that a formal written application or inquiries to previous employers would have revealed information impugning Defendant Ledezma's driving ability, or that Defendant Ledezma's lack of fluency in English somehow contributed to the collision, a jury question would be presented.[8]

In the absence of evidence tending to establish a connection between Defendant Fierro's

---

[7] Title 49 C.F.R. § 391.11(b)(2) requires the driver of a commercial motor vehicle to be able to speak and read English well enough to allow him to converse with the general public, to understand highway traffic signs and signals, to respond to official inquiries and to make reports and keep records. Other qualifications of § 391.11 include being at least 21 years old; possessing the ability "by reason of experience, training, or both [to] safely operate the type of commercial motor vehicle he/she drives;" being physically qualified as defined elsewhere in the regulations; holding a currently valid commercial motor vehicle operator's licence; having furnished his employer with the list of violations or the certificate required by § 391.15; not being disqualified under the rules in § 391.15; having been issued a certificate of driver's road test in accordance with § 391.31, or having presented an operator's license or a certificate of road test which the motor carrier accepts as equivalent to a road test.

[8] For example, in *Indian Trucking v. Harber,* 752 N.E.2d 168 (Ind. App. 2001), cited by Defendant Fierro Trucking for the proposition that violation of FMCS regulations is negligence per se, there was evidence that the defendant truck driver did not feel qualified to adjust the brakes on his truck, that the brakes were "at the outer limits of adjustment" and that faulty brake adjustment contributed to the accident. *Id.* at 173.

faulty pre-employment screening procedures or Defendant Ledezma's lack of English and Plaintiffs' injury, no genuine issue is presented for trial with respect to Defendant Fierro Trucking's negligent or wilful and wanton entrustment, supervision and hiring. Accordingly, Defendant Fierro Trucking's motion for summary judgment as to Count II of Plaintiffs' First Amended Complaint is granted.

### 3. Wilful and Wanton Misconduct

It is unclear whether Count III of Plaintiffs' First Amended Complaint rests on any foundation other than statutory and regulatory violations. However, Plaintiffs do refer to the fact that Jose Fierro hired Defendant Ledezma with perhaps five months' truck driving experience to drive a truck that when fully loaded weighed 68,000 to 69,000 pounds and that Jose Fierro himself had a similar lack of experience as a truck driver when he hired Ledezma and conducted his road test. The Plaintiffs do not maintain that these circumstances constitute any sort of statutory or regulatory violation.

Wilful and wanton misconduct consists of the conscious and intentional performance of a wrongful act or the omission of a duty with reckless indifference to the consequences, under circumstances which show that the alleged miscreant has knowledge of existing conditions and that injury would probably result. *Brown v. Saucerman*, 145 N.E.2d 898, 899 (Ind. 1958). In light of this standard, the Court finds, as a matter of law, that Defendant Fierro Trucking's alleged dereliction in hiring a driver with five months' experience to drive a big truck, without knowledge of or the existence of any other circumstances which would suggest that Ledezma was not a competent driver, does not constitute wilful and wanton misconduct. Accordingly, Count III of

11

Plaintiffs' Complaint is dismissed.

### D.  Conclusion.

For the foregoing reasons, Defendant Fierro Trucking's Motion for Partial Summary Judgment is **GRANTED** .  Counts II and  III of Plaintiffs' Complaint are hereby **DISMISSED.** Defendant Fierro Trucking's motion for oral argument is **DENIED.**

SO ORDERED on March 26, 2008.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge
